ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ALEJANDRO VARAS DUBOY<br>MARIANA LÓPEZ LÓPEZ<br><br>**RECURRENTES**<br><br>v.<br><br>DEPARTAMENTO DE LA FAMILIA<br><br>**RECURRIDA** | KLRA202400320 | Revisión administrativa procedente de la Junta Adjudicativa del Departamento de la Familia<br><br>Caso Núm.<br>2022 PPSF 00139<br><br>Sobre:<br>PROTECCIÓN A MENORES CON FUNDAMENTO |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de agosto de 2024.

Los recurrentes, Alejandro Varas Duboy y Mariana López López, solicitan que revoquemos la Resolución en la que el Departamento de la Familia confirmó a la Unidad de Investigaciones Especializadas (UIE).

El Departamento de la Familia solicitó que ordenemos a la recurrente informar si presentará una transcripción de la prueba oral, debido a que los errores señalados cuestionan la apreciación de la prueba.

La parte recurrente expresó que no necesitaba una transcripción, porque no cuestiona la apreciación de la prueba del foro administrativo.

Los hechos que anteceden la controversia que atendemos en este recurso son los siguientes.

**I**

La UIE recibió un referido en el que se imputó a los recurrentes cometer maltrato emocional contra sus hijos de seis (6) y dos (2) años. El referido incluyó las alegaciones siguientes. El

padre le grita frecuentemente y le dice palabras soeces a su hijo de seis (6) años. Los hechos alegados ocurren después de las cinco de la tarde durante la semana y los fines de semana. El padre no tiene mucha paciencia y se enoja fácilmente cuando el menor no logra sus objetivos deportivos. La madre no interviene. Ambos padres prefieren a la niña y la tratan de forma diferente. Los padres han tenido diferencias con vecinos. El 2 de diciembre de 2021 explotaron pirotecnia fuera de la residencia con su hijo sin ninguna protección.

La trabajadora social asignada rindió su informe basado en sus entrevistas a dos vecinos, ambos padres, el menor de seis (6) años, su maestra y su visita a la residencia familiar, la escuela del menor y el cuido de la menor. La funcionaria concluyó que las situaciones planteadas en el referido ocurrieron y continúan ocurriendo y determinó lo siguiente:

1. En el hogar existe la tipología de negligencia emocional hacia ambos menores que se ha ejecutado por un poco más de cuatro meses.

2. Los testimonios de todos los entrevistados validaron que las alegaciones del referido ocurrieron según plasmadas y que continúan ocurriendo.

3. El menor informó que su padre lo disciplina con gritos.

4. La información que dio el menor se validó con dos colaterales que afirman que esa situación ocurre a diario.

5. Los progenitores no reconocen la situación.

6. Los padres asumieron un comportamiento sospechoso cuando se enteraron de que el menor iba a ser entrevistado.

7. La madre dijo que bajo ningún concepto permitiría la entrevista del menor y amenazó con sacarlo de la escuela, pero no tuvo problemas con la entrevista de la menor que no habla.

8. Los padres levantaron sospecha, porque temían que el menor expresara alguna situación en el hogar.

9. Ambos padres mostraron capacidades protectoras cognitivas ausentes y no tienen una idea real de lo que se necesita para proteger a un menor.

10. Los padres (1) no demostraron estar debidamente apegados al menor, (2) no tienen un sentido de protección, (3) no comprenden la relación de causa y efecto entre sus propias acciones, (4) no autoevalúan, ni juzgan la calidad de sus emociones y conducta, (5) sus capacidades emocionales están ausentes, (6) no emplean maneras adultas para satisfacer sus emociones, (7) no son afectivos en su rol, (8) no muestran compasión protegiendo y calmando al menor, (9) no actúan en beneficio del menor, (10) sus capacidades conductuales están ausentes porque actúan bajo impulsos y no piensan antes de actuar y (11) no evitan respuestas caprichosas.

Luego de culminar su investigación, la trabajadora social recomendó una evaluación psicológica del grupo familiar para identificar diagnósticos y brindar los servicios correspondientes. La trabajadora social hizo hincapié en la importancia de que el grupo familiar reciba talleres psicoeducativos en temas de comportamiento inadecuado, etapas de desarrollo, manejo efectivo de coraje, comunicación efectiva y disciplina.

Los padres cuestionaron la determinación de ADFAN en la Junta Adjudicativa del Departamento de la Familia y acudieron a la vista administrativa junto a su abogada. La trabajadora social que realizó el informe dio su testimonio. La abogada de los padres alegó que el informe social era obsoleto, porque tenía más de un año y que la investigación se realizó cuatro (4) meses más tarde de los hechos. Según la letrada, la agencia incumplió con su reglamentación interna. No obstante, la Oficial Examinadora (OE) concluyó que el informe se presentó dentro del término establecido en ley. La funcionaria determinó los hechos a continuación.

[…]

3. El 25 de enero de 2022, la UIE recibió el referido #10375379, en el cual indicaba lo siguiente:

"para la fecha del reporte el Sr. Alejandro Varas Duboy solía gritarle al menor DVL frecuentemente y dirigirse a él con palabras soeces. Dicha situación, se alega ocurre frecuentemente después de las 5:00 pm durante la semana y fines de semana. En referido, se deprende que padre no tiene mucha paciencia con el niño cuando salen a jugar y se

enoja con facilidad cuando menor no logra los objetivos del padre en el deporte. Resaltando que según el reporte, madre no interviene en situaciones. Se entiende que progenitores poseen preferencia con la niña, ya que el trato hacia esta es diferente. En reporte también se alega que progenitores han tenido situaciones con los vecinos. Por último, que el 2 de diciembre de 2021, progenitores estaban fuera de la residencia explotando unas pirotecnias con el menor DVL al lado sin ningún tipo de protección. Como parte del proceso se realizó búsqueda de antecedentes en el sistema SIMCA donde no se identificaron referidos ni investigaciones previas".

4. El 20 de abril de 2022, la UIE, a través de Programa Integrado de Emergencias Sociales (PIES), le asignó el referido a la Sra. Natacha Dionisi Monsanto (TS Investigadora), quien comenzó la investigación el 28 de abril de 2022.

5. En entrevista con Colateral Comunidad ésta le indicó a la TS Investigadora que "ha podido percibir la dinámica familiar, la cual alega no es muy saludable", "padre se escucha a diario gritarle al niño y utilizar las palabras "coño y puñeta". Resaltando que esto se escucha estando dentro del hogar y fuera cuando el menor sale a jugar", "madre no se observa intervenir ni se escucha", "todas las acciones son dirigidas hacia el nene y no hacia la nena".

6. En entrevista con Colateral Comunidad II, éste le indicó a la TS Investigadora que "la situación que ocurre en el hogar es preocupante. Haciendo referencia que todos los días padre le grita al menor DVL de forma tal que preocupa, ya que a este niño no se le dice nada hablando", "al menor lo corrigen, le ordenan y le hablan por medio de gritos. Al nivel que la misma mascota que ellos tienen se desespera y no para de ladrar", "el problema principal son los gritos, ya que él no ha escuchado palabras soeces ni ruidos que pudiesen relacionarse a golpes", "con la niña no hay situaciones a parte de su llanto cada vez que padre grita".

7. En entrevista con la Sra. Mariana López López, ésta le indicó a la TS Investigadora que "como métodos disciplinarios aplicados utiliza la retirada de electrónicos y alza su tono de voz", "indicó ser falso que el Sr. Alejandro Varas Duboy le grite y se dirija a DVL con palabras soeces. Esta alega que en efecto, padre le alza el tono de voz cuando este hace algo mal. Alegó que esta situación ocurre dentro del hogar y al menos dos (2) veces en semana. Señaló, que en eventos ella no interviene, ya que ella y padre tienen establecido que no se pueden quitar la autoridad. Señalando que ella también le alza la voz a DVL en ocasiones y padre no interviene", "en diciembre de 2021 ella estaba junto a padre y el niño frente a su hogar (7:30pm) explotando

pirotecnias. Sin embargo, señaló que menor no estaba accesible a las mismas y el solo tenía estrellitas en la mano. Acción que alegó no fue del agrado de una vecina con la que tuvieron una fricción y amenazó con llamarles a la policía y al Departamento de la Familia. Asegurando que aparte de esta colateral su esposo y ella no han tenido más altercados con vecinos.

8. En entrevista con el Sr. Alejandro Varas Duboy, éste le indicó a la TS Investigadora que es "falsa la alegación que indica que él se dirige a DVL con palabras soeces. No obstante, valida que en ocasiones cuando este hace algo incorrecto le grita. Afirmando que esto ocurre dos (2) veces al mes y la acción la aplica dentro de la casa", "en acción madre no interviene, ya que se está establecido que no pueden quitarse la autoridad", "para diciembre de 2021 si llegó a explotar unas pirotecnias comprada en Supermax estando madre y menor junto a él. Sin embargo, alegó que él la explotó en la calle mientras el menor estaba en la acera mirando. No obstante, resaltó que a raíz de esto tuvo un altercado con vecina a quien no le gustó su acción. Sin embargo, resaltó que aparte de dicha vecina no ha tenido otras situaciones con colaterales de la comunidad".

9. En entrevista con el menor DVL, éste le indicó a la TS Investigadora que "los métodos disciplinarios utilizados por ambos progenitores son a través de los gritos. Señalando que estos le gritan duro", "validó que su papá suele gritarle todos los días estando dentro del hogar y fuera del mismo. Asegurando que le grita por todo. DVL añadió que en estas situaciones su madre no intervine, ya que al igual que su papá su mamá también le grita, aunque un poco menos. Añadió que en esta dinámica sus progenitores no hacen uso de palabras soeces", "menor no supo indicar si su padre ha tenido fricciones con sus vecinos" y "describe a sus progenitores como bien". La TS Investigadora observó a DVL "con buena higiene, vestimenta limpia y apropiada, cabello aseado, buenas destrezas orales, contacto visual, atento, risueño, respetuoso y cooperador".

10. En entrevista con Colateral Profesional IV, Coordinadora Educativa de Rainforest Kids Child, Maira Rodríguez Rodríguez, ésta le indicó a la TS Investigadora (en relación a la menor CVL) que madre "ambos progenitores son presentes en el área académica, pero es madre quien es más activa", no se ha trabajado ningún tipo de situación con la familia ni con la menor. Asegurando que la menor asiste con buena higiene, siempre sonriendo y no ha tenido indicadores de maltrato físico" y que "no han identificado situaciones que le preocupen".

11. En entrevista con Colateral Profesional IV, maestra de Rainforest Kids Child, Maribel Díaz, ésta le indicó a la TS Investigadora (en relación a la menor CVL)

que madre "es muy activa y responsable", la dinámica familiar era "normal. Por lo que, aseguró tampoco ha identificado situaciones que le preocupen".

12. La TS Investigadora no entrevistó a la menor CVL, debido a que ésta no tenía las destrezas orales desarrolladas. No obstante, la "observó con buena higiene, vestimenta limpia y apropiada, cabello aseado, contacto visual, risueña y destrezas orales no desarrolladas".

13. En entrevista con Colateral Profesional V, trabajadora social del Colegio San Ignacio, ésta indicó en relación al menor DVL que "menor siempre llega temprano, tiene buena higiene, trae materiales y muchas meriendas", "nunca se ha observado con indicadores de maltrato físico", "en el área educativa ambos progenitores son presentes. La misma los describió como responsables y atentos" y que "no ha identificado situaciones que le preocupen, ya que el menor no ha traído nada al salón de clases".

14. Como producto de la investigación, la UIE concluyó que la Sra. Mariana López López y el Sr. Alejandro Varas Duboy incurrieron en Negligencia Emocional en contra de los menores CDL y DVL.

15. El 21 de junio de 2022, la UIE de la Administración de Familias y Niños del Departamento de la Familia (ADFAN), Oficina Regional de San Juan, le notificó a la parte apelante que el referido #10375379 había sido investigado y resultó con fundamento.

16. Inconforme con la determinación la parte apelada, Mariana López López y Alejandro Varas Duboy presentaron apelación el 27 de junio de 2022.

17. En cuanto a la menor CVL, la TS Investigadora indicó en la vista que "este tipo de situaciones puede crear nerviosismo, puede crear susto en los niños", "al estar dentro del núcleo familiar, dentro de la casa, ocurriendo una situación, bien pudiese catalogarse como una Negligencia Emocional de manera indirecta", la menor CVL "tenía un comportamiento normal" dentro del plantel escolar, nadie habló de la menor, no existe evidencia de que la menor CVL fue maltratada emocionalmente de forma directa y que no se corroboró si CVL tenía nervios o susto.

18. La Sra. Mariana López indicó en la vista que su hijo y su esposo "se aman demasiado" y que ninguno de sus hijos está recibiendo tratamiento psicológico. Además, que "nosotros regañamos nuestros niños porque hay que hacerlo", "nosotros podemos alzarle la voz", "yo alzo la voz", "alzamos la voz", "nosotros tenemos tono de voz alto", "lo hacemos porque queremos que sea un niño de bien", "gritarle palabras soeces, de gritarle en exceso o gritarle

todos los días "that's not us", "si le gritamos de mil en cien, pero nada preocupante" y que "nosotros no somos malos padres, en lo absoluto".

La prueba presentada convenció a la OE de la existencia de un caso de negligencia emocional contra el menor DVL. La OE concluyó que los recurrentes no destruyeron la presunción de corrección de la determinación de la UIE, porque no presentaron evidencia sustancial que redujera el valor probatorio de la prueba que sostiene la decisión. La funcionaria confirmó a la UIE respecto a DVL, porque el menor manifestó que: (1) sus padres lo disciplinaban con gritos, (2) ambos le gritan duro, (3) el padre le grita todos los días por todo, (3) el padre le grita dentro y fuera del hogar y (4) la madre le grita un poco menos. La OE hizo constar que la madre admitió que le gritaba al menor y minimizó el asunto porque declaró que lo hacía de mil en cien y que no era nada preocupante. Sin embargo, la OE no creyó que los recurrentes utilizaran palabras soeces, debido a que el menor lo negó. Igualmente, restó credibilidad a los vecinos, porque la trabajadora social reconoció que uno de los entrevistados tuvo problemas con los recurrentes. No obstante, no identificó cuál de los entrevistados tuvo problemas con los padres.

Según la OE no existe prueba de maltrato contra la menor CVL porque: (1) no fue entrevistada, debido a su carencia de destrezas orales, (2) no existe evidencia de negligencia emocional directa en su contra, (3) no se corroboró si sufría de nervios o sustos y (4) no existe evidencia de que está presente cuando los padres le gritan a su hermano.

La OE dio entera credibilidad al informe de la trabajadora social, a su testimonio y a la entrevista que hizo al menor. Según la OE, esa prueba demostró que la conducta de los recurrentes puso en riesgo la salud e integridad mental y emocional del menor. La funcionaria concluyó que el uso de gritos como disciplina es una falta al deber de proveer atención adecuada a la salud emocional del

menor. Fue enfática en que, los gritos como forma de disciplinar ponen en riesgo a los menores de sufrir un daño o perjuicio a su salud mental y/o emocional. La OE recalcó que los niños tienen derecho a un ambiente sano y que los padres están obligados a cuidarlos, protegerlos y garantizar su seguridad en todo momento. Sin embargo, reconoció que ambos padres fueron descritos positivamente y les exhortó a continuar siendo responsables y comprometidos con sus hijos.

El 2 de mayo de 2024, la OE emitió su informe en el que recomendó a la Junta Adjudicativa confirmar a ADFAN. La Junta Adjudicativa del Departamento de la Familia acogió el informe de la OE y emitió la resolución recurrida en la que confirmó a ADFAN.

Los recurrentes presentaron este recurso en el que alegan que:

> ERRÓ LA JUNTA ADJUDICATIVA, ABUSÓ DE SU DISCRECIÓN AL ADJUDICAR COMO HIZO, FUNDAMENTADO EN UN INFORME INCONGRUENTE, Y SESGADO.

> ERRÓ LA JUNTA ADJUDICATIVA Y ABUSÓ DE SU DISCRECIÓN AL DICTAR RESOLUCIÓN ACOGIENDO LAS RECOMENDACIONES DEL OFICIAL EXAMINADOR QUE EN CLARA INCONGRUENCIA Y SESGO SE ANCLÓ EN EL INFORME PARCIALIZADO DE LA TS QUE EXTRALIMITÓ SUS FACULTADES COMO TRABAJADORA SOCIAL.

> ERRÓ LA JUNTA ADJUDICATIVA AL DICTAR RESOLUCIÓN SOSTENIENDO EL FUNDAMENTO DE UN INFORME SOCIAL HUÉRFANO DE EVIDENCIA SUSTANCIAL DE MALTRATO EMOCIONAL HACIA LOS MENORES, Y SOSTENIDO POR LA PARCIALIDAD, SESGO Y ARBITRARIEDAD DE LA TS.

**II**

Las determinaciones de las agencias administrativas están sujetas a la revisión judicial del Tribunal de Apelaciones. 4 LPRA sec. 24y(c). El Tribunal de Apelaciones revisará, como cuestión de derecho, las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. Las determinaciones de hecho de las decisiones de las agencias serán

sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. 3 LPRA sec. 9675.

El examen jurídico de las determinaciones administrativas se circunscribe a determinar si las agencias han actuado en forma arbitraria, caprichosa, ilegal o tan irrazonablemente que constituya un abuso de discreción. Los tribunales revisores otorgaremos deferencia a las decisiones administrativas, debido a que los organismos gubernamentales gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración. Por esa razón, sus dictámenes tienen una presunción de legalidad y corrección. *Transporte Sonnell, LLC v. Junta Subastas Aut. Carreteras,* 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rueda v. Bella Retail Group,* 2024 TSPR 70, 213 DPR ___ (2024); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 839 (2021); *Capó Cruz v. Junta de Planificación,* 204 DPR 581, 591 (2020); *Municipio de San Juan v. CRIM,* 178 DPR 163, 175 (2010). Esta presunción de legalidad y corrección subsiste mientras no se produzca prueba suficiente para derrotarla. *Hernández Feliciano v. Mun. Quebradillas*; supra, pág. 114; *OEG v. Martínez Giraud*, supra, págs. 88-89; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998).

La parte que impugna judicialmente las determinaciones de hechos de una agencia tiene el peso de demostrar que no están basadas en el expediente o que las conclusiones del foro administrativo son irrazonables. La razonabilidad es el criterio rector al momento de pasar juicio sobre la decisión de una agencia. *Hernández Feliciano v. Mun. Quebradillas*; supra, pág. 115; *OEG v.*

*Martínez Giraud,* supra, pág. 90; *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2018); *González Segarra et al. v. CFSE,* 188 DPR 252, 276–278 (2013); *OCS v. Universal,* 187 DPR 164, 178–179 (2012); *Otero v. Toyota,* 163 DPR 716, 727 (2005).

La evidencia sustancial que surge de la totalidad del expediente y en la que debe estar basada la determinación administrativa, ha sido definida jurisprudencialmente como aquella que es relevante y que una mente razonable podría aceptar como adecuada para sostener una conclusión. Así las cosas, ha de quedar claro que la deferencia no es absoluta y, por tanto, no implica que la evidencia sustancial esté sostenida por un ligero destello de evidencia o por simples inferencias. El crisol evaluativo de las determinaciones administrativas siempre estará guiado por el concepto de razonabilidad, conforme la evaluación del expediente administrativo en su totalidad. *OEG v. Martínez Giraud,* supra, pág. 89. Los tribunales analizarán las determinaciones de hechos de los organismos administrativos amparados en los criterios de deferencia y razonabilidad, *González Segarra et al. v. CFSE,* supra.

Las determinaciones de derecho de las agencias son revisables en todos sus aspectos. 3 LPRA sec. 9675. La revisión se ciñe a determinar si: (1) el remedio concedido por la agencia fue el apropiado, (2) las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo visto en su totalidad y (3) las conclusiones de derecho fueron correctas. *Otero Rueda v. Bella Retail Group,* supra. El respeto a la resolución administrativa se sostiene hasta que no se presente evidencia suficiente para derrotar la presunción de legalidad. *OEG v. Martínez Giraud,* supra, pág. 89; *Hernández Feliciano v. Municipio de Quebradillas*; supra, pág. 115; *Moreno Lorenzo y otros v. Depto. Fam.,* supra, págs. 839–840; *Capó Cruz v. Jta. Planificación et al.,*

204 DPR 581, 591 (2020); *Torres Rivera v. Policía de PR*, supra, págs. 626–627.

La deferencia a la interpretación que las agencias hacen sobre las leyes que le corresponde poner en vigor, cede cuando: 1) erró al aplicar la ley, 2) actuó arbitraria, irrazonable o ilegalmente o 3) lesionó derechos constitutivos fundamentales. El criterio administrativo no prevalece, cuando la interpretación estatutaria que realiza la agencia provoca un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y con la política pública promovida. La deferencia cede ante una determinación que resulte irrazonable, ilegal o que conduzca a la comisión de una injusticia. *OEG v. Martínez Giraud*, supra, págs. 90-91. Los tribunales tienen que armonizar todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, siempre que sea posible. El objetivo de ese análisis es obtener un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, pág. 843.

El Tribunal Supremo de Puerto Rico ha insistido en la necesidad de ubicar al foro revisor en tiempo y espacio, cuando en los errores señalados se cuestiona la apreciación de la suficiencia de la prueba. La forma de ubicar al tribunal revisor en tiempo y espacio de lo ocurrido en el foro primario es mediante alguno de los mecanismos de recopilación de prueba oral, como lo son la: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado,* 211 DPR 654 (2023).

Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, la prueba que tuvo ante sí el foro primario a través de alguno de los mecanismos de recopilación de la prueba oral. *Pueblo v. Pérez Delgado*, supra, pág. 671. El Máximo Foro Judicial local ha reiterado en múltiples ocasiones que las disposiciones reglamentarias que gobiernan los

recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. Los abogados vienen obligados a dar fiel cumplimiento al trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos, ya que no puede quedar a su arbitrio decidir qué disposiciones reglamentarias aplican y cuándo. De esta forma, es tarea del recurrente presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del tribunal *a quo. Pueblo v. Pérez Delgado*, supra*, págs. 671-672. Es decir, que el recurrente o la parte que impugna la adjudicación de apreciación y credibilidad de la prueba oral desfilada tiene el deber y obligación de colocar al Tribunal de Apelaciones en posición de atender correctamente sus planteamientos, mediante la presentación de la transcripción de la vista o, en remedio, con una exposición narrativa.

Según lo establecido por el Tribunal Supremo en el caso *OEG v. Martínez Giraud*, supra

> "es un principio reconocido que, de ordinario, el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia, o quien sostiene la afirmativa en el asunto en controversia. De esta forma, aquel que busca de un remedio o una sanción en el ámbito administrativo, al igual que en el judicial, tiene que probar su caso. Es decir, tiene que evidenciar, con prueba suficiente en derecho, que sus alegaciones no constituyen meros señalamientos, sino un reclamo cierto y sostenible. Lo contrario, atentaría contra los principios más elementales de la justicia." *OEG v. Martínez Giraud, supra,* pág. 97.

Nuestro más Alto Foro judicial local expresó en *Camacho Torres v. AAFET*, 168 DPR 66, 92 (2006), lo siguiente:

> "[c]uando la impugnación de las determinaciones de hecho se base en la prueba oral desfilada, así como en la credibilidad que le mereció a la agencia administrativa, este Tribunal ha expresado que '[e]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba."

El Tribunal Supremo de Puerto Rico se expresó en *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 129-130 (2019),

sobre la necesidad de ubicar en tiempo y espacio al foro revisor cuando se impugna la apreciación de la prueba en el contexto de un proceso administrativo. Los tribunales apelativos no deben intervenir con la apreciación de la prueba oral por la agencia recurrida, cuando no tienen forma de evaluar la evidencia presentada, porque la parte promovente no elevó una transcripción. La tarea de presentar al foro revisor la prueba oral bajo la que se pretende, impugnar las determinaciones de una agencia corresponde a la parte interesada. La Regla 66 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 66, establece el trámite a seguir para que se autorice la reproducción de la prueba oral desfilada en el procedimiento administrativo.

**III**

El Departamento de la Familia ha planteado la necesidad de que la recurrente acompañe una transcripción de la prueba oral, debido a que en todos los errores cuestiona la apreciación de la prueba de la agencia. No obstante, la representación legal de los recurrentes insiste en que la transcripción no es necesaria, porque no cuestiona la apreciación de la prueba del foro administrativo.

La parte recurrida tiene razón. La recurrente cuestiona la apreciación de la prueba y adjudicación de credibilidad del foro administrativo. Todos los errores que señala son un ataque a la credibilidad que la agencia dio al testimonio de la trabajadora social que realizó la investigación y que preparó el informe sobre el cual fue interrogada en la vista administrativa. Su representación legal aduce que las determinaciones de hecho de la OE no cumplen con la definición de maltrato por negligencia, porque durante la vista no se probó que los padres actuaron con intención. Los recurrentes alegan que la OE se limitó a anclarse en las declaraciones del informe de la trabajadora social y la Junta a acogerlas literal y llanamente.

En el presente caso, la presentación de una transcripción de la prueba oral era necesaria, porque los recurrentes cuestionan la credibilidad de la trabajadora social en la vista administrativa y las determinaciones de hecho que hizo la OE. Sin embargo, no nos proveyeron las herramientas necesarias para que podamos ejercer nuestra función revisora, debido a que su abogada se negó a presentar la transcripción. La falta de una transcripción nos impide ejercer nuestra función revisora porque sin esa herramienta es imposible pasar juicio sobre la credibilidad de los testimonios y la evaluación del foro administrativo. El incumplimiento de los recurrentes con las reglas del Reglamento del Tribunal de Apelaciones relacionadas a la reproducción de la prueba y de la transcripción, nos obliga a honrar la deferencia que merece la decisión del foro administrativo.

**IV**

Por los antes expuesto, se confirma la resolución recurrida.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones